That brings us to our final case this morning, number 22403, Netflix, Inc. v. DivX, LLC. Okay, Mr. Saunders. May it please the Court. The Board's reading of Netflix's arguments was clearly unreasonable and based on a methodological error that pervaded its opinion. Do we review all of your arguments under abusive discretion standards? They are reviewed under abusive discretion standards, but under that standard, we have time and again, the Board is looking at statements in isolation without considering the surrounding sentences or the relationships between the arguments. For example, in its reading of our new manifest filtering argument, that argument is the lead argument under the filtering section. The sentence that leads into that passage talks about filtering. It directly quotes from Pyle's teaching about optimizing the new manifest based on a number of characteristics, the same characteristics we see in the patent. You never connect the creation of a new manifest 422 to the word filtering a list of asset in the same way that you do at the bottom of A6046 when it comes to selecting an appropriate manifest from a set of manifests as filtering a list of assets. Is that fair to say? No, I respectfully disagree. Let me put a finer point on it then. You don't ever say the word filter in connection with the block quote that talks about creation of a new manifest. Is that fair to say? No, because it's in the sentence right beforehand. So the lead into that, 6046, says... Well, the lead into it says, Pyle teaches the use of new manifest files that can be created based upon particular devices or capabilities. Then comes your block quote. Pyle further teaches filtering the list of assets using at least one device capability. Pyle teaches the use of new manifest files that can be created based upon particular devices or capabilities. It's a different paragraph though, right? Sure. And then, you know, you didn't include it in the joint appendix, but when you actually look at the prior page of the petition, you know, you're talking about how, as explained for limitations 1b and 1c, Pyle teaches a quote manifest component, end quote, configured to quote maintain multiple manifests, end quote. That is to say, we're back to talking about selecting one manifest from multiple manifests, not talking about the creation of a new manifest when it comes to filtering a list of assets. No, because the theory here on the multiple manifests is they are serving as the source of information that would then be going into the new manifest. And then there's an alternative theory that you could have the databases from Marussi come in and supply that information. Here's the problem I have. I mean, whether I like it or not, I've been appointed to a life sentence of reviewing IPRs on appeal. And so I've looked at over a hundred. Unfortunately, that's not the only thing we do. Sometimes it feels like it. And so I've read well over a hundred IPR petitions now, maybe close to 200. And when a petitioner in a petition makes alternative arguments about the prior art meeting a given limitation in a claim, they'll always give you a signal. Alternatively, reference Y likewise teaches this limitation.  Moreover, reference Y also teaches this limitation. I don't see anything like this. I see it being very reasonable for the board to look at your block quote about the new manifest as an introduction and then continues on to what's the real heart of the argument here at A6046, which is the idea of selecting an appropriate manifest from a list of manifests as being the quote unquote filtered list of assets as you appropriately and clearly and cleanly connected at the bottom of A6046. Well, three quick things, Your Honor. First, then it would make no sense what is the new manifest argument doing in there because it's not connected. Second, the lead-in to the next paragraph is Pyle also teaches keeping sets. And then third, what you have to remember is that the board's holding here is that there is a mismatch between your theory on filtering and your theory on generating. And if you look in the generating discussion, that begins on 6050 by referring back to what we just said on filtering. And then it says, as explained for limitations 1c and 1d, Pyle teaches both creating new manifest files as well as it has the separate selection. And then it finishes the generating discussion. So again, holding is there's a mismatch between generating and filtering because your filtering isn't about new manifests. The generating discussion finishes on 6052 by saying, Pyle is teaching the generating of new manifests by filtering the available list of assets to include only a subset of assets based on the product identifier information. But there's another problem with this new theory, and that is going back to the prior claim limitation of retrieving a list of assets, wherein each asset is a different stream associated with a piece of content. And when you go back and look at your petition on the retrieving a list of assets, it does a long song and dance about how there are a whole host of manifests, and then each manifest is an asset, and each manifest is a different stream of content. And so you've conditioned the board through this long section on the retrieving a list of assets to understand that you're contemplating your reliance on the list of manifests as being the respective list of assets that's being retrieved. So then when we get to the filtering of the list of assets, it makes perfect sense to read the text of your section as is, which is to say selecting one of the manifests from that list of manifests as being a filtering of the assets. I mean, there are two theories. I guess what I'm wondering, if I can finally ask the question, where in the retrieving the list of assets section of your petition did you talk about how whatever individual components that make up a new manifest can also be retrieving a list of assets? Well, with respect, there are separate limitations. So it is talking about an individual manifest or all of the manifests collectively can be the list of assets. And then we have a teaching here that's saying, or you can create a new manifest that's optimized based on these characteristics. And the theory is where is that information coming from? That information's coming from because you have lists already. I guess what I'm highlighting is there's a collision of internal inconsistency in the theory you presented anyway. Whether we link up the filtering of assets to be consistent with the generating of a top-level index, you nevertheless still have a problem on the retrieving the list of assets side because you never continue to thread through that limitation that generating a manifest is somehow included in that, that is a precursor step of retrieving a list of assets that will eventually make up a new manifest. Well, first a procedural point and then a subsequent one. Procedural point, they made both these arguments. They said there's a mismatch between filtering and generating and a mismatch between retrieving and filtering. The board did not rule on that first one. So under Chenery, I don't think that is before this court. And there isn't a mismatch there again because the information for the new manifest can be coming from those pre-existing sources. That's where you have these lists that are available. But also in the alternative, the motivation to combine, we talk about reading this all in context, the whole section begins by talking about Marussi and the combination there in terms of its use of databases. And so we don't, this theory isn't solely that piles new manifest can be created based on the existing information, the existing manifest. There's also an alternative theory that says you take Marussi's database teachings and all of that background information. We're talking about very, very simple stuff. The basic information about these video files will be saved in that database of Marussi and then could be used when creating this newly optimized manifest. And on this issue of whether there are separate arguments, if there is any doubt in the petition, we then come back in the reply brief and say we're talking about a new manifest or selecting. There's a colloquy about this at the oral hearing at 6528 through 6530, in which the board's saying do I understand you to be having two theories of filtering? And the answer is yes, and that is all laid out and explained. So to ultimately have a holding that say we're not going to consider this because your sole theory on filtering is selection, and that's mismatched with your generating limitation, it is a clearly unreasonable reading of the petition. All we're asking is to be able to have a ruling on the merits on that and not to have the board based on a mistake about what we're arguing. How is creating a new manifest filtering a list of assets? Because you're creating a new manifest that is tailored for device capabilities. The claim language says wherein an asset or each asset is a different stream of the video content. So if you're going to be doing this filtering, you've got to be doing it on a stream-by-stream basis, and I don't see how creating a new manifest is doing that. Well, you're filtering, but you're not filtering out every stream, right? You finish with a top-level index file that will have multiple streams so the device can select. For example, if it has a bandwidth problem, and then it can select. Yeah, I'm just trying to understand how does creating a new manifest mean that you are filtering assets when assets are different streams of video content? For example, I want to watch The Lion King. There's going to be a bunch of different streams for that Lion King, and I'm going to get one of them, but it will be dependent on whether I want to watch it on an iPhone or HD television or standard television, whether I want to watch it in English, Japanese, German, what the network connection is, what form factor we're working with. All of those different things and all of those different possibilities make up the different streams, make up the different manifests, make up the different assets. And so I don't understand. I'm completely baffled by how a creation of a new manifest, the creation of a given stream is actually somehow filtering one stream from another. So the new manifest is being optimized based on the very characteristics you're talking about. So if you have your pre-existing store of information, whether it's in the pile manifest. Do you agree that an asset is a stream? An asset, yes, could be. Is a stream. It's a stream of content of The Lion King. I think it depends on what you mean by stream. In pile, it's broken down even further because you're looking at additional track levels. But it could be some, an asset could be some piece of content, yes, whether it's audio, video in one format, in a different format. So how does creating a stream mean you're filtering one stream from the rest of the streams? Because if you. That's different. Well, but if you have a list. I mean, so imagine that you take the list of cases that you see in the table of authorities in brief. And then you on another piece of paper looking at that list say, okay, these are the four cases that are most relevant to me because they're the precedential cases. They're not the non-precedential cases. That would be an act of filtering. You've taken a larger universe of information. You've created a new document, but it is optimized for your purpose. It contains the subsets. When it says create a new manifest that's optimized for things like, is it French language? The clear implication is you're not interested in the German language. You're not interested in the English language. You would be filtering it by focusing on that subset. And the patent itself is very broad. You're not going to see a narrower conception of filtering in the patent. It essentially says any technique can be used to filter. So having cast the broad net, I don't think we've heard a claim construction argument about that not being filtering. Mr. Saunders, as I understand it, the new manifest is something that is created by the content provider. Am I correct? Well, the board disagreed with that. It didn't address that in the file written decision, but in the institution decision 6208 through 6209, the board said we do not read that portion of PILE as limiting the composition of new manifests to content providers. And that was correct. It pointed out that that was an exemplary language. For example, the content provider may create it, but it's not limited to the content provider. So your position is that even the new manifest is somehow created by retrieving a list of assets identified with some piece of content that the playback server requested? Yes, absolutely. And we've relied on the disclosure in Figure 4, and the diagram shows the request coming in, and what can come out is either a selection of assets. What are the assets that are being retrieved in that instance? In that instance, if it's based on PILE alone, the assets that are being retrieved is the information you're taking in that the system already has from its existing manifest. I didn't get an actual, more detailed answer. When you are creating a new manifest in PILE, what are the list of assets that are being first retrieved and then filtered? The assets themselves are the underlying tracks, the audio and video tracks in PILE. Those assets exist in a list form within the existing manifest, or it would be obvious in combination with Marussi and its database teaching to have that information in a database form. In that form, you have sort of the entire universe of what you might need, and you are optimizing that for the particular device by selecting a subset here. So you've retrieved the list of assets, and you are then filtering it and generating the new manifest. Now, all this really collapses into one step. We have something that's breaking it down in granular detail, much in the way that you would have if you say, pick up my pen, point it towards the paper, make contact with the paper, produce intelligible writing. You might have a prior art reference that just says, do handwriting on a piece of paper. I think a lot of the board's confusion here is trying to say, what are the relationships between these and which buckets do we put these in, when it is really a very simple step that's coming here in terms of generating, taking in that information and filtering. Could you briefly discuss the PILE-Marussi combination and the board's statement that somehow you weren't relying on Marussi for filtering? This is what I mean by not looking at the context. The board is hung up on the fact that it talks about using Marussi's databases, identifiers, and lists for PILE to filter the assets. But the sentence right before the sentence the board's relying on, and this is on 6049, says, Marussi also teaches identifying a subset of multimedia content files, having a specific digital format supported by the requesting device. Above that on the same page, there's a block quote from Marussi about its matching unit 150. The whole point of this was to be making an alternative argument. The board is saying, we don't agree with you on PILE filtering, so you lose on the combination of Marussi and PILE. What we're saying is, no, in the context of the combination, it's not PILE unchanged doing the filtering. It's PILE in the context of bringing in these database teachings from Marussi and what it has there. I guess, why wouldn't it be reasonable to read this whole Marussi discussion at 6048 to 6049 in the context of what is said at the bottom half of 6047, where you're talking about how Posita would have found it obvious looking at the teachings of PILE that the product identifiers and associated device capabilities be maintained by the server, such as in a database block quote. And then to the extent DeVicks argues that PILE does not satisfy this limitation, it would be obvious to combine the teachings of PILE with Marussi. And then we finally get to the bottom, and then you talk about how being motivated to employ a known component, Marussi's database, in a predictable way, which is for PILE to filter the assets. And so in that sense, this whole discussion is about the database in that context. Well, it's a discussion of two responses. It's a discussion of Marussi and its database that includes the sentence I read just before, which is how Marussi is using that database, which is to identify the subset of assets. There's the disclosure of Marussi's matching unit. But even if it were just – I guess on these two pages, are you saying there are two alternative theories of combination of PILE and Marussi? Theory number one would be PILE's filtering with Marussi's database. And then theory two, just Marussi's filtering with Marussi's database? When we talk about PILE's filtering, these are all interrelated. So the question is, what is PILE filtering at that point? I'm just trying to figure out what the board was supposed to figure out from these pages. Was it supposed to figure out that there were two alternative theories in the combination of PILE and Marussi? They're supposed to think that it is Marussi and its associated teachings that have been brought in here. And when it says for PILE – I just need a yes or no answer. Are these two pages representing that Marussi teaches both filtering the list of assets and the database? The discussion of these two pages has both of those teachings. So you don't even need PILE then for meeting this particular limitation. That's what these two pages are communicating. You wouldn't need PILE, but it can be that it's argued in combination with PILE, but it's not PILE unmodified. It's PILE in combination with Marussi. Of course, with Marussi's database, that one theory comes through clearly. You're now arguing that also lurking in here is the idea that Marussi was relied on for filtering a list of assets. And that's what I'm trying to figure out here. Because if that is true, then that's tantamount to saying Marussi teaches this entire claim limitation. It could be, but we don't have to go there. It could be. It could not be. How do we know? It doesn't say what I just said. Let's assume it's just Marussi's database. What we have then is a teaching that Marussi has this information in the database, and PILE would be generating, creating a new manifest that is optimized for the particular devices. So you have a database that has the list of all your assets. Some are in this format. Some are in this language. Some are in this language. And then you create a new manifest optimized based on those particular characteristics. What is missing from that? The reason the board – but the board says it doesn't look at those in combination. Well, you're coming back to PILE. I mean, it says on page 40 here, which – 6048. 6048. It says explicitly, as discussed, Marussi filters from a database, which suggests that Marussi is doing the filtering. So what does that mean? Right. So this is what I'm trying to say with Joe Chen. I think this is fairly right. There are two arguments here. It relies on – it can be either Marussi's filtering, or it can be PILE's filtering. And the board is – But always Marussi's database in both of those. In these combinations, always from Marussi's database, yes.  Well, when you talk about – there is a combination in the sense that it's combined with PILE for some of the other limitations. I'm just talking about this limitation, trying to understand what you were trying to tell the board for this one filtering limitation. Right. So it talks about Marussi filters from a database. Why wouldn't it be reasonable to read this portion of the petition that Judge Dyke just referred to as setting the table for why one would combine PILE's filtering with Marussi's database? And the petitioner is trying to show us that, see, Marussi is kind of in the same space, sort of trying to do the same thing. And so that's why it would be obvious to combine Marussi's database with PILE's filtering. That's a typical thing that we see in petitions, again, from the many IPR petitions I've read. You try to explain and identify why the references you're combining are located in the same technical space. But you're not relying on everything from each of the references individually to try to match up to the claim limitation. No, you are relying on one piece from reference A and one piece from reference B to match up with the claim limitation. Right. But the way this petition is structured, and I do think the board was thrown by this, is it has that earlier discussion. At 6029 is the discussion of the motivation to combine. And then at this point, we're talking about the specific limitations. 6029 says, you know, implementing Marussi's technique for organizing multiple representations and choosing among them based upon a device's capabilities would predictably function in PILE's system. And I think one of the things we struggle with is because there are so many multiple paths here. It's incumbent upon the petitioner to make it clear. But the petitioner is allowed to argue in the alternative like this. And what the board can't do is when you have these multiple paths laid out, is say, I am doing no separate analysis for the combination of PILE and Marussi. That's what the board did. The board did say... Well, that's what the board seems to be saying is even though you said Marussi filters, we're going to not credit that and think what you really meant was that PILE filters. Right. They're not addressing it as argued. They're addressing it as if we were just saying it's the exact same as PILE. And so there's no separate analysis of the combination. They just say we ruled against you on PILE. We ruled against you on this. So we think that this is another example where it latched onto for PILE to filter in isolation.  I recognize I'm... Okay. Thank you, Mr. Saenz. We'll give you a couple minutes for rebuttal. Thank you. Mr. Petillo. May it please the court. The statute... Could we look at this last point while we have it rushing our minds about the PILE Marussi combination? Certainly. I mean, the petition specifically says Marussi filters from a database. And how is it that the board can say they didn't argue the Marussi filters, what they really meant, only PILE filters? Well, I think they're... How could that be? Well, because there are several responses to that, Your Honor. The first, I think, is as Judge Ten was alluding to. When they mentioned that Marussi filters from a database,  you would say, oh, well, PILE would filter from a database because Marussi filters something from a database. Now, the issue is, well, what were they filtering? And the board correctly found that here, although the petition mentioned that Marussi filtered from a database, it ultimately relies on PILE for filtering in the context of these patents. And... Excuse me. When somebody says explicitly that a reference does something, they can say, well, you didn't really mean that. So we're going to construe it as meaning something else. Well, I think... You know, how could they do that? Well, I think we have to look at specifically, what did they actually say in their petition that Marussi filters? And at 6048, what they actually say Marussi filters from, they mention filtering a database of product identifiers and device capabilities. And that's an entirely different thing than what's going on here. That's essentially saying... That's a different argument than the board's. Well, no, Your Honor. I think that they were... They recognized that they were teaching filtering... That they were teaching... That they were trying to link up the... Why would you apply Marussi's database teachings with PILE? Because it actually does a different... A sort of filtering. The board said, in this context, we're looking to what did they tell us themselves? How did they sum up their arguments? At the very end, Netflix explicitly says, we are relying on, quote, Marussi's database teachings of identifiers and associated assets, and, quote, relying on PILE to filter the assets. And it cannot be an abuse of discretion for the boards who have accepted Netflix's own characterization of its own argument. At the end of the day, they noted that they were relying on Marussi only for the database teachings, and they were relying on PILE for the filtering. And to the extent they earlier talked about Marussi doing a different sort of filtering, a different sort of function, that was just to show, well, why would you use... Why would you combine these two? Well, if you're trying to filter things, you might use a database. But that's entirely different, because Marussi... That's not what the board said. The board said, we look at this argument and think what they really meant. Not what they said explicitly. They said explicitly Marussi filters. Why doesn't the board have to address that argument instead of saying, oh, well, they didn't really mean it? Well, I think that... Respectfully, I think that they did. They were talking about... They ultimately rely on PILE for filtering. Filtering in the context of what? And here, the filtering limitation is filtering, you know, a list of assets where each asset is a different stream. And nowhere do they try and show where Marussi involves filtering a list of assets. Not once do they discuss Marussi, you know, filtering a list of assets, you know, to ultimately sort them out and produce the manifest files at the end of the day. Marussi doesn't even involve manifest files at all. And so it was entirely fair for the board to say that even though it mentions filtering, that's not the sort of filtering we're talking about with respect to what the limitations require. And so it was fair for the board to look back and say... The board didn't say that. I think that's absolutely fair reading of the board's... There's a couple sentences. They just say, oh, well, we think they didn't really mean it. They were relying on PILE. They don't say, this is referring to a different kind of filtering. They don't make that argument. Your Honor, I respectfully think that that is a fair reading of the board's decision, especially when you look at what Netflix was actually arguing. Where did Netflix actually argue... Where did they actually argue that it filters a list of assets at all? And they don't point to that. There's not a single statement in the petition. To the extent that they talk about... You know, now counsel points to identifying a subset of multimedia content files. They didn't actually make that argument expressly in the petition. The only statement in the petition... Counsel points to a big block quote, and they try and pluck something out of it. But the fact is, the board's rules require you to say, if you're going to cite evidence, you have to explain the relevance of that evidence. And to the extent they want to point to identifying a subset of multimedia content files now, they never made that argument below. All they said was, yeah, Mercy involves filtering a database of content, of product identifiers and device capabilities. And so it wasn't even discussing filtering the list of assets that are at issue here. So I think it's entirely fair to say, as the board found, even though you mentioned it's filtering, that's not the type of filtering we're talking about here. You said you were ultimately relying on Pyle to filter, and Mercy for its database teachings. And I think it's absolutely fair to hold Netflix to how they characterize their own argument. And in fact, that's what all of these issues boil down to, is was it fair for the board to hold Netflix to what's in its petition? The rules required Netflix to make its arguments with particularity. And the narrow question before this court is, was it an abuse of discretion for the board not to have discerned all of the supposed alternative arguments that counsel was discussing here from the very skeletal and very conclusory statements that we have in the petition? And I don't think this is an abuse of discretion. It's not even the same ballpark as abuse of discretion. Netflix is saying, to go back to Pyle itself, that the board overlooked the petition's argument that Pyle's new manifest disclosed the filtering the list of assets limitation. The board didn't overlook that argument. It specifically noted that Netflix had pointed to Pyle's discussion of the new manifest in relationship to the filtering limitation. But the problem was Netflix's argument was a single sentence, and it didn't discuss filtering. It said, Pyle teaches the use of a new manifest that can be created based upon particular devices or capabilities. And again, that was followed by a block quote to Pyle's new manifest 422.  It doesn't mention a list of assets. And the board's rules require you, you can't just throw out... You don't have to use magic words. You don't have to use magic words, but you have to provide an explanation. And you can't just say, well, this teaches creating, and then have a block quote and then say, well, that shows filtering a list of assets when the block quote is not apparent how that involves filtering a list of assets. And in fact, the block quote doesn't involve filtering a list of assets because the only disclosure in Pyle of the new manifest 422 is talking about content providers create this. And that means that the studios who are producing the multimedia content. And what does Pyle say about this? Well, if they look at what streams are important, and we notice more people are using the iPhone 12, and we notice more people are looking at this in French, we need to do a version of the new X-Men movie, and this will be the most popular manifest, so let's create a new manifest. None of that has anything to do with generating a new manifest file dynamically the way DivX's patent claims to. It's an entirely separate process that's entirely consistent with how Pyle works because Pyle doesn't work remotely like Netflix's, excuse me, DivX's patents do. The whole theory behind Pyle is saying, you know what, it would be a great idea if we could identify the universe of manifest files that devices are going to need, the most likely ones, we're going to create those in advance, and we're going to have them stored, and we're going to have them ready to go so that when, you know, someone needs the French version of Batman Returns, you know, for an HDTV, we're going to pluck that off the shelf and provide it. And that is why they cannot show that Pyle discloses, you know, generating, you know, filtering a list of assets to create a new manifest in the same way as our system because it's an entirely, entirely different process. And it was entirely fair for the board to say, you know, you pointed to creation of the new manifest, but you didn't explain how Pyle's new optimized manifest teaches filtering. And I don't think we could point to where they mentioned the new manifest 422 in the context of the filtering limitation, but they never provided it, the specificity that they needed.  And they never explained how that requires filtering, and they can't. And part of the reason, too, and it's especially clear when you look at what their theories of the list of assets actually are. You know, I heard counsel say, and I believe they also said this in their reply brief, that, you know, the assets were sort of the underlying things themselves in the manifests. And why did they say that? Because there's clearly no way that Pyle discloses going back and grabbing manifests to create the new manifest. But the fact is that that's incorrect. The notion that somehow now the underlying assets themselves are the list of assets is just, you know, the board made a finding that Netflix relied on Pyle's list of assets, on the manifests as list of assets, whether taken individually, taken collectively. And Netflix's opening brief confirmed that was correct. They said we have two theories. There are two ways in which Pyle's manifests are the list of assets. It's each manifest individually. It's each manifest collectively. That's at 35 of their brief. So instead of disputing that, they confirmed it's correct. And so there's just no way that Pyle disclosed. Excuse me. You mentioned that Pyle generates these new manifests sort of in advance, and they're available as needed. And you make the distinction in your brief that the claims require generating files, top-level index files, on the fly. Where in the claim does it talk about generating top-index files on the fly? Well, it's throughout the entire method. It's the method of generating a top-level index file. The playback server system receives the request. It's the playback server system performing all of these steps in a row.  The next thing that you do in the method is you retrieve a list of assets, a broad set of assets. They're different streams. All of this happens in response to a request. Yes. You're characterizing that as sort of generating on the fly. Yes, Your Honor. And distinguishing that from Pyle. We're distinguishing that from Pyle, exactly. And if you just walk through it. Is the new manifest in Pyle not generated on the fly as you're using that expression? It is not. The only disclosure anywhere in Pyle of how the new manifest is created, and this is at Appendix 1528, Column 1060, is the new manifest is created by the content providers themselves. The new manifest is created by the studios who are finding what are the most popular. I thought that was an issue that the Board didn't reach. I heard Mr. Saunders say that the question of whether it had to be generated by the content provider was not resolved. So what the Board found is that correct or not? What the Board found is that correct. Perhaps I'm misunderstanding your question. Mr. Saunders said that the Board did not resolve the question of whether the content provider had to communicate the list of assets. And that the Board specifically did not resolve that question. And now you're attempting to distinguish Pyle on the ground that there was not disinvolvement by the content provider. Is it correct that the Board didn't resolve that question? It is correct that the Board found that the example I have been discussing is not limiting. That is absolutely correct. What the Board did find, though, is that the only express disclosure... How is it that that was the whole basis, as I understood it, for your suggestion that it had to be done on the fly? That's not our suggestion of why it has to be done. Our claims are the reason why it has to be done on the fly. Our argument is showing why... When you responded to Judge Lynn, you said the claims require it to be done on the fly because of the involvement of the content provider. And now you're saying there's some other reason? I'm sorry, perhaps I wasn't clear. No, our claims require it to be done on the fly. What distinguishes our claims from Pyle is that Pyle is not performed... Where does the claim require it to be done on the fly? I think it's absolutely implicit in the method itself. You're receiving... It's the playback server itself that's receiving a request from the playback device. The next step in response to that, it retrieves the list of assets that are different streams to see, okay, which ones do we need. And that's when it filters the list of assets. It gets rid of the streams that you don't need. If you're in the United States, you need an English language version. You don't need... I don't quite follow why you're putting so much time into this on-the-fly business about your generating limitation when at the moment I don't see how it connects at all to the question at hand, which is are any or all of the arguments on appeal by Netflix forfeited by not being fairly presented in the petition? Judge Chen, we absolutely agree that the court doesn't need to go there. We're just trying to... The fact is all of the board's findings that these issues were waived or not raised are entirely fair based on the actual arguments in the petition. They failed to show an abuse of discretion. We're just discussing the other elements to show why these sort of alternative theories are actually not really there and why they couldn't actually be made based on the references themselves. I agree the court does not have to go there. It could just look at whether the board fairly characterized the petitions and whether that was an abuse of discretion. The answer is no, it was not, and we respectfully ask that the court affirm. Thank you. Okay. Thank you. Mr. Saunders, you have a couple minutes. Thank you, Your Honor. As was just addressed, most of what we heard are not the issues that the board reached. These are the issues that we want to get back to. We want to fight these out in front of the board so it can consider on the merits. Instead, what we had was a threshold procedural ruling, and on the combination with Marussi, we have the statement about filtering from a database used to select the device identifiers that's used to select the appropriate stream to transmit. Next page, entire paragraph there from Marussi about its matching unit adapted to identify a subset of the multimedia content file. Why should any of that be understood as a database that somehow contains material for filtering a list of assets when those words don't quite come out in these pages? Well, there's not a requirement that the prior art disclose it in the same words. I understand that, but there is a requirement to explain what you're actually pointing to that actually matches the words of the claim. The words of the claim are filtering a list of assets where each asset is a different stream of video content. And so the next question is, you do use the word filtering at one point, but I don't understand why there's a basis for you to say that filtering from a database that associates terminal identification information with terminal capabilities information somehow should be understood as the same thing as filtering a list of assets where each asset is a different stream of content. Right, because the end of that sentence is explaining you're doing that and then, quote, that is used to select the appropriate stream to transmit. And then the block quotes are describing the filtering from the capabilities, then it's describing Marussi's matching unit, and then it's summing up at the beginning saying Marussi also teaches identifying a subset of multimedia content files. So with all of those teachings laid out, and this is, when we talk about the level of detail here, I mean, these block quotes are trying to be as transparent as possible, show you exactly what's being relied on as you would see in a claim chart, Putting everybody on notice, these are the very passages we're relying on, and the whole point of this argument is to argue in the alternative. If you're not with us on PILE, Marussi fills this in. I see Mike. Okay. Thank you, Mr. Chairman, First Counsel. The case is submitted. That concludes our session for this morning.